**CIMARRON FEDERAL SAVINGS ASSOCIATION, substitute party-appellant for Cimarron Federal Savings and Loan Association, substitute party-plaintiff for Home Savings and Loan Association, Appellant,**

v.

**Ewel D. JONES and Katherine Jones, Appellees,**

and

**State of Oklahoma, ex rel. Oklahoma Employment Security Commission, Clinton Lumber Company, KC Interiors, Inc., an Oklahoma corporation, Color Wheel Decorating Store, Betty Wright, and TV and Appliance Land, Inc., Defendants.**

**No. 75028.**

Court of Appeals of Oklahoma, Division No. 1.

July 9, 1991.

Rehearing Denied Aug. 19, 1991.

Certiorari Granted for Limited Purpose April 30, 1992.

As Amended by Order of the Oklahoma Supreme Court April 30, 1992.*

* For Supreme Court Order See 832 P.2d 420.

Kent Ray Allen, Mark Alan Harter, Kimball, Wilson, Walker & Ferguson, Oklahoma City, for appellant.

Randolph Meachum, Meachum & Meachum, Clinton, for appellees.

## MEMORANDUM OPINION

BAILEY, Judge:

Appellant Cimarron Federal Savings Association seeks review of the Trial Court's order granting summary judgment to Appellee Katherine Jones (Katherine) in Appellant's action for foreclosure of mortgage, by which the Trial Court held Appellant's mortgage interest inferior to Katherine's homestead claim. Herein, Appellant asserts (1) Katherine's homestead claim is not exempt from Appellant's purchase money mortgage interest, (2) Katherine failed to prove all necessary elements of a common-law marriage to Appellee Ewel Jones (Ewel) and is not therefore entitled to assert a homestead interest, and (3) Appellant is nevertheless entitled to judgment under 42 O.S.1981 § 26 governing vendor's liens. Upon Appellees' agreement thereto, the motion to substitute Cimarron Federal Savings Association, suc-

cessor in interest to Appellant Cimarron Federal Savings and Loan Association, filed the Conservator, Resolution Trust Corporation, is granted, and Cimarron Federal Savings Association (hereinafter Appellant or simply Cimarron) is ordered substituted as party-appellant in this matter.

Cimarron commenced the instant action against Ewel in September, 1988, to collect on notes and for foreclosure of mortgage after Ewell fell in default in payments. Ewel answered, admitting execution of the note and mortgage, but asserted that he and Katherine were married at the time of execution of the note and mortgage, that Katherine did not join in the note and mortgage, and in essence, the superiority of Katherine's homestead interest to Cimarron's mortgage claim.

Cimarron deposed Ewel and Katherine. Katherine testified that although she and Ewel had been previously married and divorced, they moved into the subject property together in September, 1979, and agreed to become husband and wife on October 28, 1979, holding themselves out as such thereafter to friends and family. Ewel admitted application for and execution of the notes and mortgage to secure purchase money for the subject property as a "single person" on December 7, 1979, but corroborated Katherine's testimony concerning their common-law marriage previous to execution of the mortgage.

Cimarron then moved for summary judgment, asserting superiority of its purchase money mortgage interest and/or vendor's lien. Katherine also moved for summary judgment, setting forth her testimony allegedly establishing her common-law marriage to Ewel previous to Ewel execution of the mortgage, her non-joinder on the purchase money note and mortgage, and asserting superiority of her homestead interest.

The Trial Court granted summary judgment to Cimarron as to Ewel's interest, but granted summary judgment to Katherine as to the superiority of her homestead claim, specifically finding:

1. That in about August, 1979, [Ewel] entered into an agreement to purchase the subject property from VICO Enterprises, Inc. ("VICO").

2. That pending closing of the purchase agreement, [Ewel] rented the subject property from VICO, on a month-to-month basis.

3. [Ewel] went into possession of the property as his primary residence. [Katherine] lived with [Ewel].

4. That [Ewel] and [Katherine] went into possession of the subject property in early September, 1979, pursuant to a rental agreement with VICO and are presently occupying the subject property.

5. When [Ewel] and [Katherine] went into possession of the subject property [Ewel and Katherine] were single persons and not husband and wife.

6. That on or about October 28, 1979, [Ewel and Katherine] entered a valid common-law marriage and that upon establishing said common-law marriage, occupied the subject property as their principal residence.

7. That the homestead claim of [Katherine] in and to the subject property attached upon entering the common-law marriage....

. . . . .

12. That the purchase money mortgage executed ... by [Ewel], a single person ... is a valid purchase money mortgage as to [Ewel], [but] said mortgage was not executed by [Katherine], and therefore is not a valid mortgage as to her homestead interest.

Cimarron now appeals as aforesaid.

In its first proposition, Cimarron asserts its purchase money mortgage interest is not subordinated to Katherine's homestead claim as a matter of law. We agree. In that regard, the Oklahoma Constitution provides:

The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of the purchase money ...; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in the manner prescribed by law; Provided,

Nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy the mortgage.

Article 12, § 2, Oklahoma Constitution.

... [N]o property shall be exempt for any part of the purchase price while the same or any part thereof remains in the possession of the original vendee, or in the possession of any purchaser from such vendee, with notice; ....

Article 12, § 3, Oklahoma Constitution.

Early in statehood, the Oklahoma Legislature codified the superior status of purchase money interests over homestead claims:

The exemption of the homestead provided for in this chapter shall not apply where the debt is due:

1. For the purchase money of such homestead or a part of such purchase money.....

31 O.S.1981 § 5.

In the present case, Katherine asserts the priority of her homestead claim based in part on the Constitutional provisions cited above, and on § 4 of Title 16, which provides in pertinent part:

... No deed, mortgage, or contract affecting the *homestead exempt by law,* ..., shall be valid unless in writing and subscribed by both husband and wife, if both are living and not divorced, or legally separated, except as otherwise provided by law.....

16 O.S.1981 § 4. (Emphasis added.)

It is at this point that we disagree with Katherine's assertion of the superiority of her homestead claim. While Katherine maintains that her non-joinder on the note and mortgage, as wife of Ewel, renders Cimarron's purchase money mortgage invalid as to her and her homestead claim, Katherine overlooks the unambiguous pro-

vision of 16 O.S.1981 § 4 to the effect that only a mortgage on a "homestead *exempt by law*" need be subscribed by both living spouses. Clearly, Art. 12, § 3 of the Oklahoma Constitution and 31 O.S.1981 § 5 subordinate all homestead claims to the holder of a purchase money mortgage. In the present case, Cimarron holds a valid purchase money mortgage interest in the subject "homestead," and Katherine's homestead claim is not "exempt by law" therefrom; rather, by operation of Art. 12, § 3 and 31 O.S.1981 § 5, Cimarron's purchase money mortgage takes precedence over any homestead claim. Thus, because Cimarron's purchase money interest is superior to any homestead claim by constitutional and statutory mandate, Katherine's homestead claim is *not* "exempt by law" from claims of purchase money security holders. See, *In re Gardner's Estate,* 122 Okl. 26, 250 P. 490 (1926) (homestead may be sold for purchase money); *Zehr v. May,* 67 Okl. 97, 169 P. 1077 (1917) (no homestead right can be acquired or asserted in land upon which the purchase money is unpaid as against party to whom purchase money is due); *Hamra v. Fitzpatrick,* 55 Okl. 780, 154 P. 665 (1916) (purchasers have no homestead exemption against levy and sale under execution to satisfy judgment for part of purchase money). Contra, *Core v. Nave,* 773 P.2d 767 (Okl.App.1989).[1] Katherine's non-joinder on the mortgage under 16 O.S.1981 § 4 is thus irrelevant.

We therefore hold Katherine's homestead claim inferior to Cimarron's purchase money mortgage interest. Having so concluded, we find Trial Court erred as a matter of law in granting summary judgment to Katherine.

The order of the Trial Court granting summary judgment to Katherine, holding her homestead claim superior to Cimarron's

---

1. We are unpersuaded by the holding in *Core v. Nave,* in that the appellate court in *Core* did not address the scope of the term "homestead exempt by law" as used in 16 O.S.1981 § 4. In that regard, we are concerned that the appellate court in *Core* may have overlooked what we perceive as the crucial issue in cases such as

these, that is whether a homestead is "exempt by law" from claims of the purchase money mortgage holder, so as to render a purchase money mortgage inferior to a spouse's homestead claim where the spouse did not join in the purchase money note and mortgage.

purchase money mortgage, is therefore REVERSED.

GARRETT, P.J., and ADAMS, J., concur.